UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:21-cr-00275-SEB-TAB |
| | ) | |
| JERRY GLENN, | ) | -01 |
| | ) | |
| Defendant. | ) | |

**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS**

Now before the Court is Defendant's Motion to Suppress [Dkt. 25], filed on

January 28, 2022. Defendant Jerry Glenn is charged in the Indictment with one count of

Possession with Intent to Distribute Controlled Substances, in violation of 21 U.S.C.

§ 841(a)(1). Mr. Glenn seeks to suppress all evidence obtained from the search of his

person on July 18, 2021, on the grounds that his consent to the search was not knowing

and voluntary. Neither party has requested an evidentiary hearing and we understand

there is no factual dispute between them. The Motion is fully briefed and, based on the

applicable principles of law explicated below, Defendant's Motion to Suppress is

DENIED.

1

## Factual Background[1]

At approximately 4:30 a.m. on July 18, 2021, Kokomo Police Officers were dispatched to 1800 N. Wabash Street in Kokomo, Indiana, based on a citizen call of a male (later determined to be Mr. Glenn) passed out in his vehicle.  Upon arriving at the location, the officers initially were unable to rouse Mr. Glenn, who was located in the driver's side of the vehicle, as the car keys remained in the ignition, with his head back, mouth open, and eyes closed.

At least one of the responding officers appeared to be familiar with Mr. Glenn and the officers called him by name in their attempts to rouse him.  After the officers shouted his name several times, Mr. Glenn roused himself and responded.  The officers removed Mr. Glenn from the vehicle and escorted him to the sidewalk.  Officer Walden inquired of Mr. Glenn, saying: "Hey, Jerry, we're worried that maybe you took some sort of substance or you drank too much or something, is that the case?"  Exh. 1, 4:31:45.  Mr. Glenn denied having taken any illegal drugs.

Mr. Glenn remained responsive to the officers' questions and continued to deny having taken any illegal substances.  The officers stated that they believed he was under the influence and therefore requested that he take a breathalyzer based on his slurred speech, "super pinpoint" pupils, and difficulty balancing.  Exh. 1, 4:32:50.  The officers also observed in plain view inside Mr. Glenn's vehicle an unlabeled prescription pill

---

[1] Our factual recitation is drawn from evidence revealed in the body camera footage from the arresting officer, Kokomo Police Officer I. Walden, as well as Officer Walden's sworn arrest report.

bottle.  In response to Officer Walden's inquiry about the pill bottle, Mr. Glenn stated that

he had previously been prescribed pain medication after being stabbed and requiring

surgery, but no longer had a prescription for the pills.  The pills were identified by the

police as gabapentin or Neurontin—a non-controlled substance requiring a prescription to

possess in Indiana.  Exh. 1, 4:39:05–4:41:05.

Officers told Mr. Glenn that they could not permit him to return to his car because

they believed he was "high."  Rather than arrest Mr. Glenn, the officers inquired whether

he had anyone who could come and pick him up.  Mr. Glenn stated that he did, but, when

he attempted to operate his phone, it would not function.  An officer asked Mr. Glenn

where they could take him, since they were not going to let him return to his vehicle as he

was "obviously high on something."  Exh. 1, 4:42:20.  Mr. Glenn twice responded that he

wanted to go to "Kingston Green," a nearby apartment complex.  Exh. 1, 4:42:45.

Officer Walden said to Mr. Glenn, "Hey, how about this, dude?  Let's take you

back to Kingston Green, okay?  We'll leave the car here, it's legally parked.  You come

back and get it when you're not high.  How about that?"  Exh. 1, 4:43:10.  Mr. Glenn

replied, "Yes, sir."  Exh. 1, 4:43:21.  Officer Walden then stated, "Okay, I don't have a

problem transporting you, but I am going to put you in handcuffs, because you're high.  I

don't trust you, I don't know you.  I never met you before.  I don't trust you.  Well, you

said, you're like, you're not trying to … you're just being … you're hinky to me, you are."

Exh. 1, 4:43:17.

Mr. Glenn turned his back to Officer Walden to have the handcuffs placed on his

wrists, but before transporting Mr. Glenn, Officer Walden paused to ask: "Hey, hang on,

before I do this, do you, do you want us to take you out there?" Exh. 1, 4:44:00.  Mr. Glenn replied, "I'd appreciate it …. Wait, take me …?" *Id.*  Officer Walden responded: "To Kingston Green. … I'm not trying to take you to jail.  I'm trying to take you somewhere you can stay." *Id.*  Following this exchange, Officer Walden cuffed Mr. Glenn and walked him to the police car, and Mr. Glenn thanked Officer Walden for giving him a ride.

Before placing Mr. Glenn in the police car, Officer Walden asked him: "Nothing in your pockets?" Exh. 1, 4:45:31.  Defendant indicated that he had nothing in his pockets.  Officer Walden then asked: "Do you care if I search you before I put you in my car?" Exh. 1, 4:45:36.  Mr. Glenn replied, "No sir." *Id.*  Officer Walden said, "You don't care?" Exh. 1, 4:45:40.  Mr. Glenn again responded in the negative.  Officer Walden said, "Appreciate your cooperation at this point." Exh. 1, 4:45:42.  Officer Walden then searched Mr. Glenn's cargo shorts pockets, and found controlled substances in both pockets, including the methamphetamine, which is the basis of the charge in the Indictment.  Upon discovery of the controlled substances, Mr. Glenn was informed of his *Miranda* rights and placed under arrest.

## Discussion

Mr. Glenn contends that the evidence obtained from the warrantless search of his person requires suppression because he did not voluntarily consent to the search, which therefore violated his rights under the Fourth Amendment to the United States

Constitution.[2]  The government responds that, under the totality of the circumstances, the search was reasonable under the Fourth Amendment and thus not violative of Mr. Glenn's constitutional rights.  The government further argues that, had Mr. Glenn not consented to the search, he would have been arrested, and the controlled substances would have inevitably been found in the course of that arrest.

While warrantless searches are presumptively unreasonable under the Fourth Amendment, "one of the specifically established exceptions" to that rule is the subject's consent.  *Vinson v. Vermilion Cty., Ill.*, 776 F.3d 924, 929 (7th Cir. 2015) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)).  However, consent is invalid if it results from duress or coercion.  *Bogan v. City of Chicago*, 644 F.3d 563, 568–69 (7th Cir. 2011) (citing *Valence v. Wisel*, 110 F.3d 1269, 1279 (7th Cir. 1997)).  Whether consent is voluntary or the product of duress or coercion "is a question of fact to be determined from the totality of all the circumstances."  *Valance*, 110 F.3d at 1278 (quoting *Schneckloth*, 412 U.S. at 227).  In assessing the voluntariness of a search, courts consider various factors, including the "age, education, and intelligence of the defendant; advisement of his rights; how long he was detained prior to the consent; repeated requests for consent; physical coercion; and whether he was in custody."  *United States v. LaGrone*, 43 F.3d 332, 334 (7th Cir. 1994); *accord Schneckloth*, 412 U.S. at 226.  These factors are reviewed in the light of "objective facts, as presented to a reasonable inquirer,

---

[2] Mr. Glenn does not claim, nor do we find, that the officers' investigatory stop was unlawful under *Terry v. Ohio*, 392 U.S. 1 (1968).

that would reasonably put him or her on notice that voluntary consent could not be given." *United States v. Grap*, 403 F.3d 439, 445 (7th Cir. 2005).

In considering these factors in the case before us, we find that the evidence establishes that Mr. Glenn freely and voluntarily consented to the search of his person. Mr. Glenn was 34 years old at the time of the encounter and, by that point in his life, had had several interactions with law enforcement. The body camera footage reveals that Mr. Glenn understood the officers' questions, displaying sufficient awareness of his circumstances to provide appropriate responses to the officers' questioning. Mr. Glenn was detained for less than eighteen minutes prior to the search—not an unreasonable length of time, considering that the officers first had to rouse Mr. Glenn and then spend time exploring ways to resolve the incident before ultimately seeking his consent to search his person in connection with transporting him to what we understand was a friend's residence.

The officers neither repeatedly asked, nor badgered Mr. Glenn for his consent. Instead, Officer Walden asked Mr. Glenn only one time whether he objected to being searched; when Mr. Glenn indicated that he did not object, Officer Walden confirmed Mr. Glenn's consent prior to patting him down. It is true that Mr. Glenn was in handcuffs at the time he consented to the search, which under some circumstances can indicate coercion, but not here. The application of handcuffs does not "mechanically vitiate" consent. *United States v. Beltran*, 752 F.3d 671, 677 (7th Cir. 2014).

Here, before Officer Walden cuffed Mr. Glenn, he explained to Mr. Glenn that he was not under arrest and that the handcuffs were only to ensure Officer Walden's safety

while transporting him in the police car.  In fact, Officer Walden went further by confirming before applying the handcuffs that Mr. Glenn agreed to the officers transporting him to the apartment complex and that he had no objections to being handcuffed.  At no point during the encounter were any of the officers physically or verbally aggressive or abusive towards Mr. Glenn.  They remained polite and patient and professional throughout the interaction, never threatening Mr. Glenn in any way.  Neither did they threaten to place him under arrest if he did not consent to the search.[3]  Under these circumstances, the fact that Mr. Glenn was handcuffed at the time he consented to be searched is immaterial in the absence of some other evidence of coercion that might erode or otherwise trump the voluntariness of his consent.

The fact that the officers believed Mr. Glenn to be under the influence of some intoxicant such that he could not safely operate a vehicle at the time he consented to the search also does not render his consent involuntary under the totality of the circumstances present here.  As the government concedes, when officers know or "reasonably should have known that a suspect is under the influence of drugs or alcohol, a lesser quantum of

---

[3] Defendant contends that the fact of the government's claim in support of their inevitable discovery argument, namely that, had Mr. Glenn not consented to the search, he would have been arrested for possession of the prescription pills and that the controlled substances would have been discovered during the search incident to his arrest, establishes that his consent to the search was not voluntary because he would have been arrested had he not consented.  Had the officers threatened Mr. Glenn with arrest if he did not consent to the search, Defendant's argument might be well taken.  However, the body camera footage shows that during their encounter the officers never indicated to Mr. Glenn that he would be arrested if he did not agree to be searched.  To the contrary, the officers repeatedly reassured him that they had no intention of arresting him.  The fact that the government now argues Mr. Glenn would have been arrested had he not consented is irrelevant to a determination of voluntariness when there is no evidence that any such threat was conveyed to Mr. Glenn at the time he consented to be searched.

coercion may be sufficient to call into question" the subject's voluntariness.  *United States v. Haddon*, 927 F.2d 942 (7th Cir. 1991) (in the context of the voluntariness of a confession).  However, the "mere fact that an individual is intoxicated does not render consent involuntary."  *United States v. Scheets*, 188 F.3d 829, 839 (7th Cir. 1999).  An individual's intoxication due to drugs or alcohol "is simply another factor to be taken into consideration when assessing the totality of the circumstances in considering the voluntariness of the consent."  *Id.* at 839–40.

As discussed above, the record does not reflect the use of any coercive tactics by the police, such as prolonged questioning or badgering, that might cast doubt on the voluntariness of Mr. Glenn's consent.  Although the officers clearly believed Mr. Glenn was under the influence of either drugs or alcohol at the time of their encounter with him, his interactions were lucid and responsive and appropriate.  There was no indication that Mr. Glenn was impaired to a point of inability to understand what he or anyone else engaged with him was doing and saying.  There is no evidence from which the reasonable conclusion could flow to establish that Mr. Glenn's intoxication rendered his clearly expressed consent involuntary.

For these reasons, Defendant's Motion to Suppress is <u>DENIED</u>.

IT IS SO ORDERED.

Date:   _____2/24/2022_____

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Michelle Patricia Brady
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
michelle.brady@usdoj.gov

William M. Butler, Jr.
William M. Butler, JR.
wmb@kycriminallawyer.com